IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-00150-WS-N |
| | ) | (Civil Action No. 11-00474-WS) |
| STACY PARKER, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This action is before the Court on a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 (doc. 86) filed by Defendant Stacy Parker.  This

matter has been referred to the undersigned Magistrate Judge for entry of a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of the

Parker's § 2255 motion, the Government's response in opposition thereto (doc. 91) and

Parker's reply brief (doc. 92), as well as all other pertinent portions of the record, it is the

recommendation of the undersigned that the § 2255 motion be **DENIED**.

## I.      BACKGROUND

A.      <u>Procedural History</u>.

On July 30, 2009, a grand jury indicted Stacy Parker in an eight-count indictment

and charged her with violating 18 U.S.C. § 371 – conspiracy to commit bank fraud

(Count 1), 18 U.S.C. § 1344 – bank fraud (Counts 2-5), and 18 U.S.C. § 513 – possession

of counterfeit securities (Counts 6-7).  (Doc. 1)  On September 17, 2009, Parker pleaded

guilty to Counts Five and Eight pursuant to a written plea agreement, which included a

standard sentence appeal waiver.  (Doc. 38)  In exchange for Parker's guilty plea, the

Government agreed to recommend dismissal of the remaining counts and a sentence

within the advisory guideline range. *Id*. at 4. Parker also agreed to make full restitution as determined by the Court. *Id*. Parker, pursuant to the plea agreement, reserved the right to appeal, or raise in a § 2255 motion, only the following: (1) a sentence in excess of the statutory maximum; (2) an upward departure from the guidelines range, and (3) a claim of ineffective assistance of counsel. *Id*. at 5. On December 18, 2009, United States District Judge William H. Steele sentenced Parker to a 60-month term of imprisonment, to be run consecutive to the 46-month sentence she was already serving, followed by a five-year term of supervised release.[1] (Docs. 61, 76 at 8-10) On December 28, 2009, Parker and her counsel, James M. Byrd, executed and filed a Notice of Appeal. (Doc. 63) The Court entered judgment on December 30, 2009. (Doc. 61)

The core concerns of Fed. R. Crim. P. 11 were thoroughly addressed during Parker's guilty plea hearing and are detailed in her written guilty plea agreement with the government. (Doc. 38) Parker affirmed that she was not under the influence of drugs, medication, or alcohol and further affirmed that she did not suffer from any mental health issues. *Id*. at 2. Parker also declared that she had fully discussed the charges, and the case in general, with her attorney, and was satisfied with the advice and representation she had received from her attorney. *Id*. Parker further confirmed that her decision to plead guilty, and the decision to sign the plea agreement was not the result of any guarantees, threats, pressure, or coercion; she understood that she was pleading guilty to felony charges. *Id*. at 3. Parker confirmed that she understood the Court was not a party to the plea agreement and was free to accept or reject the government's sentencing

---

[1] Parker's guideline range was calculated to be 12 to 18 months. (Doc. 52 at 18, ¶ 72)

recommendation.  *Id*. at 4.  Parker also acknowledged the statutory sentencing range and the advisory sentencing guidelines.  *Id*.

Parker indicated she understood that she had no obligation to plead guilty, that she could exercise her right to jury trial, with the attendant presumption of innocence, and right to compel witnesses to testify.  *Id*. at 1.  Also included in the plea agreement, Parker understood the elements of the charges as recited to her by the Court and understood that those elements would have to be proven by the government in order to obtain a conviction.  *Id*.  Parker also signed the factual resume and admitted that the allegations contained therein were true.  *Id*. at 8-13.  Parker pleaded guilty to Counts Five and Eight. *Id*.  However, the Court did not accept the government's within the guidelines sentencing recommendation and, instead, sentenced Parker to 60 months, an "above-the-guidelines" or enhanced sentence.  (Doc. 76).

On December 28, 2009, Parker timely filed a notice of appeal.  (Doc. 63).  Parker appealed only her sentence, arguing that it was unreasonable.  (Doc. 81 at 5).  The Eleventh Circuit applied an abuse of discretion standard and affirmed Parker's sentence on the grounds that, because Parker did not object either to the presentence investigation report ("PSI"), which fixed Parker's offense level at 11 and her criminal history category at III, or to the district court regarding its imposition of sentence, which would have given the district court an opportunity to "correct any error it may have made," it was in no position to "hold that the district court abused its discretion in imposing sentences without Objection."  (*Id*. at 5-6).  The Eleventh Circuit opinion was issued as a mandate on August 25, 2010.  (*Id*. at 3).

B.     Habeas Petition.

On August 18, 2011, Parker filed a motion to vacate, set aside, or correct judgment and sentence on the following grounds: (1) her trial counsel was ineffective because he (a) failed to review and discuss the government's produced discovery and failed to properly advise Parker of the plea agreement, thus rendering her guilty plea involuntary (b) failed to file objections to the PSI, (c) failed to seek a variance from sentencing guidelines, and (d) failed to seek a departure from sentencing guidelines;  and (2) her appellate counsel was ineffective because (a) he failed to assert the correct standard for review, and (b) he argued only one issue on appeal.  (Doc. 86).  On August 25, 2011, the United States filed a motion to strike Parker's 45- page motion because it exceeded the 30-page limit, violating Local Rule 7.1(b).  (Doc. 88).  On August 29, 2011, the Court denied the United States' motion to strike Parker's motion.  (Doc. 89).

On October 31, 2011, the United States responded in opposition to Parker's motion to vacate, set aside, or correct sentence.  (Doc. 91).  The government maintains the motion should be summarily denied or dismissed, in sum, because Parker's plea fails to show that her counsel was deficient or the result of the proceedings would have been different but for her lawyer's allegedly deficient performance.  *Id*.  On November 14, 2011, Parker responded to the United State's response in opposition to vacate, set aside, or correct sentence.  (Doc. 92).   The issues have been fully briefed and are ripe for adjudication.  There is no need for an evidentiary hearing because Parker's claims can be resolved based on the existing record.  Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983)(" An evidentiary hearing is not required where, as here, the district court can determine the merits of the ineffectiveness claim based on the existing record."); *see also*

Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)("[D]istrict court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous."); United States v. Mobley, 2013 WL 4166553, *22 (S.D. Ala., August 15, 2013)("There is no need for an evidentiary hearing [because] [o]n the existing record, Mobely has not presented non-conclusory facts that, if true, would entitle her to relief.").

## II. STATEMENT OF THE LAW

A. Habeas Standard.

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a [] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *see also* Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of the collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Consequently, '[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 WL 3200694 at *3 (S.D. Ala. 2008).

B. Procedural Default.

A habeas petitioner is generally barred from raising a claim in a § 2255 motion that he did not raise on direct appeal. This principle has been summarized by the Eleventh Circuit Court of Appeals as follows:

> Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge. <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994). A defendant cannot overcome this procedural bar unless he can demonstrate a cause for this default and show actual prejudice suffered as a result of this alleged error. *Id*. In the alternative, a defendant can also overcome this procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice; 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of showing of cause for the procedural default." *Id*. (*quoting* <u>Murray v. Carrier</u>, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)).

<u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005). However, claims of ineffective assistance of counsel fall outside the procedural default rule and, in most cases are properly raised for the first time in a habeas petition. <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

    C.    <u>Strickland v. Washington Standard</u>.

A two-fold analysis is applied to claims of ineffective assistance of counsel as follows:

> To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. *Id*. at 687-89, 104 S.Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. *Id*. at 687, 104 S.Ct. at 2064.

> Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied. *Id*. As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been. *Id*. at 697, 104 S.Ct. 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); <u>Duren v. Hopper</u>, 161 F.3d 655, 660 (11th Cir. 1998)

("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong"). . . .

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. [P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. [T]hat the errors had some conceivable effect of the outcome of the proceeding' is insufficient to show prejudice." Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (*quoting* Strickland, 466 U.S. at 693, 104 S.Ct. at 2067).

United States v. Butcher, 368 F.3d 1290, 1293-94 (11th Cir. 2004). In making the

performance determination, conduct must be evaluated from the attorney's perspective at

the time in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689.

In guilty plea cases, the prejudice showing requires a defendant to demonstrate that, but

for alleged ineffective assistance of counsel, the defendant would not have pleaded guilty.

Hill v. Lockhart, 472 U.S. 52, 59 (1985). Given the petitioner's exacting burden, "the

cases in which habeas petitioners can properly prevail . . . are few and far between."

Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc).

III.     Analysis.

A.     Validity of Parker's Guilty Plea (Claim I).

In her first habeas claim, Parker contends, in sum, that her guilty plea was not

knowing and voluntary because counsel failed to discuss the effect of entering a guilty

plea. (Doc. 86 at 21). Parker claims she did not meet with counsel regarding her plea

until the day of the change of plea hearing. *Id*. Parker further contends that counsel never

discussed the discovery produced by the government, and thus, she was "totally

prejudiced." *Id*.

Parker's ability to collaterally attack her guilty plea is greatly limited. As the Supreme Court has made very clear:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-2547, 81 L.Ed.2d 437 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " <u>Reed v. Farley</u>, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994) (*quoting* <u>Sunal v. Large</u>, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591, 91 L.Ed. 1982 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." <u>United States v. Timmreck</u>, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979).
>
> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," <u>Murray v. Carrier</u>, 477 U.S. 478, 485, 106 S.Ct. 2639, 2643-2644, 91 L.Ed.2d 397 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506-2507, 53 L.Ed.2d 594 (1977), or that he is "actually innocent," <u>Murray</u>, *supra*, at 496, 106 S.Ct., at 2649-2650; <u>Smith v. Murray</u>, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667-2668, 91 L.Ed.2d 434 (1986).

<u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998)(emphasis added).

"[T]here is a strong presumption that statements made during the plea colloquy are true." *See* <u>United States v. Medlock</u>, 12 F.3d 185, 187 (11th Cir. 1994). Despite Parker's declaration that her counsel did not discuss discovery with her, she pleaded guilty and confirmed under oath and in writing both her willingness to enter a plea and her guilt. (Doc. 38.) In her guilty plea, Parker declared that she understood she had the right to be represented by an attorney and the right to plead not guilty. *Id*. at 2. The plea agreement was explicitly clear and unambiguous. Parker attested in her guilty plea that:

> "[P]arker has had the benefit of legal counsel in negotiating this plea agreement. She has discussed the facts of this case with her attorney, Mr. Byrd, and Mr. Byrd has explained to Parker the essential legal elements of the criminal charge which has been brought against her. ***Mr. Byrd has also explained to Parker his understanding of the United States' evidence***."

*Id*. Parker further declared she was giving her guilty plea freely and voluntarily, and that she was pleading guilty because she was guilty. *Id*. at 3.

The assertion that Parker was unaware of the plea agreement until the day she signed it or that counsel did not discuss the discovery with her does not invalidate her guilty plea, entered both in writing and under oath in open court, with her counsel present and available for consultation. (Doc. 52 at 9-13).[2] The record establishes, through Parker's own testimony during the plea colloquy, that her guilty plea satisfied the core requirements of Rule 11 of the Federal Rules of Criminal Procedure:

> (1) that the plea is free from coercion; (2) that the defendant understands the nature of the charges presented; and (3) that the defendant knows and understands the consequences of pleading guilty. United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996). The court has wide latitude in satisfying these core concerns. "[T]here is no one mechanical way or precise juncture that a district court is required to inform the defendant of the nature of the charges in the Rule 11 colloquy." United States v. Wiggins, 131 F.3d 1440, 1443 (11th Cir. 1997). The extent of the court's explanation of the elements of the charges offense depends largely on the complexity of the elements, *see* United States v. Byrd, 804 F.2d 1204, 1205-06 (11th Cir. 1986), and the defendant's sophistication and intelligence." United States v. Bell, 776 F.2d 965, 968-69 (11th Cir. 1985) (quotation and citation omitted).

United States v. Brown, 526 F.3d 691, 704 (11th Cir. 2008). "To determine whether a guilty plea is actually voluntary, knowing, and intelligent the district court judge must

---

[2] Parker has a lengthy criminal history including eight criminal convictions and including a prior conviction in this Court. In at least five of the eight criminal cases discussed in Parker's PSI, and occurring between 2001 and 2009, she was represented by James Byrd. (Doc. 52 at 9-13). The three cases which do not list James Byrd as counsel, there is no information concerning the identity of counsel.

address the defendant in open court and meticulously follow the provisions for such a dialogue set forth in Fed.R.Crim.P. 11." United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986), *citing* United States v. Dayton, 604 F.2d 931, 936-38 (5th Cir. 1979) (*en banc*), *cert denied*, 455 U.S. 904 (1980). The record reflects that the District Judge followed this procedure. (Doc. 38 at 1-2, 6).

Contrary to her present allegations that counsel improperly advised her and never discussed discovery, the record reflects that Parker's plea was knowing and voluntary. (*See* Doc. 38). In Parker's plea agreement, and her declarations under oath and in open court, Parker confirmed that she understood her rights as a defendant, that she waived certain rights by pleading guilty, the maximum penalty she may receive by pleading guilty, her obligation to make restitution, and her limited waiver of right to appeal her sentence. (Docs. 38, 76). The final paragraph of the plea agreement, directly before Parker's signature, reads:

> I have consulted with my counsel and fully understand my rights with respect to the offense charged in the Indictment pending against me. ***I have read this Plea Agreement and carefully reviewed every part of it with my attorney***. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Doc. 38 at 6.

Furthermore, the Strickland test discussed above also specifically applies to ineffective assistance of counsel claims that "arise out of the plea process." Hill v. Lockhart, 474 U.S. 52, 57-8 (1985). Defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel must make "a showing of prejudice." *Id*. (internal quotations omitted). The Supreme Court held that

such a showing of prejudice "will serve the fundamental interest in the finality of guilty pleas." *Id.*, *citing* United States v. Timmreck, 441 U.S. 780 (1979). [I]n order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Id.* at 59. Parker neither makes the assertion she would have insisted on being tried by a jury, nor does she acknowledge the Strickland requirement of such a showing of prejudice. Parker only generally claims she was "totally prejudiced." (Doc. 86 at 21; Doc. 92 at 2-3) Parker has, therefore, failed to establish that her counsel was ineffective to the point that her guilty plea was involuntary, and thus invalid. She failed to establish that "counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Strickland, 466 U.S. at 686. Consequently, Parker's Claim I is without merit, and habeas relief is due to be denied.

    B.    Parker's Sentencing Claims (Claims II, III and IV).

Parker next claims, in sum, that her counsel was ineffective because he failed to object to the PSI to the extent that it gave a two-level enhancement for her leadership role in the crime pursuant to U.S.S.G. § 3B1.1(c). (Doc. 86 at 10, 28-30) Parker further contends her counsel should have argued to the court the existence of mitigating factors to reduce her sentence. (*Id.* at 10, 32-34; Doc. 92 at 7)

"A district court's determination of a defendant's role in an offense is a finding of fact subject to review only for clear error." United States v. Camargo-Vergara, 57 F.3d 993, 997 (11th Cir., 1995), *citing* United States v. Taxacher, 902 F.2d 867, 873 (11th Cir. 1990), *cert. denied* 499 U.S. 919(1991). *See also* United States v. Forbes, 888 F.2d 752,

754 (11th Cir. 1989)("The court's determination of a defendant's role in a crime is a finding of fact to which the clearly erroneous test applies" and, as a threshold matter, defendant must show "prejudice resulting from the court's decision [about defendant's role]".) Parker, the proponent of the downward adjustment in this case, bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *See* United States v. Everett, 129 F.3d 1222, 1224 (11th Cir. 1997), *citing* United States v. Gates, 967 F.2d 497, 501 (11th Cir. 1992); Camargo-Vergara, 57 F.3d at 997-98.

As set out in the plea agreement, Parker, on two occasions, exchanged counterfeit checks for cash with a confidential informant. (Doc. 38 at 11). At one point, Parker told the confidential informant to pick up the checks under the doormat at *Parker's residence*. (*Id*.). Parker later informed the confidential information she planned to "hit" Toys-R-Us, Big Lots, and TJ Maxx. (*Id*.). After searching *Parker's residence*, authorities found computers, printers, counterfeit checks, blank check stock, and other assorted records. (*Id*. at 12). A computer expert reviewed the found computer and identified evidence pertaining to check printing. (*Id*.).

Parker now claims her mother, a co-defendant, was the leader of this offense. However, this new assertion is unsupported by the record. Parker argues "[C]ounsel failed to advise the Court that one of Parker's co-defendants is her mother. Therefore, it is quite obviously [sic] that Parker was not the leader – her mother was. Had this been argued, said enhancement would not have been granted." (Doc. 86 at 28-29). The mere fact that Parker's mother is also a co-defendant does not preclude Parker from taking a leadership role in the offense. Parker has not provided any facts or directed the Court to any evidence of record to establish that her role in the offense was subservient to her

mother's role, or for that matter, in any way distinguishable. *See e.g.* United States v. Demer, 369 Fed.Appx. 979, 982 n. 2 (11th Cir. 2010)(It is irrelevant that a co-defendant played a more intricate role in the subject crime because "there are instances where, like here, there are no minor or minimal participants."); United States v. Bertel, 160 Fed.Appx. 958, 960 (11th Cir. 2005)(" The determination of whether to apply a role reduction is a heavily fact-based inquiry and a sentencing court, "in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted."). Parker has, therefore, failed to meet her burden of "proving the applicability of a particular Sentencing Guidelines section which would reduce the offense level." Camargo-Vergara*, 57 F.3d at 997-98, citing* United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir.1989). Consequently, Parker has failed to establish that trial counsel provided ineffective assistance by failing to object to her leadership role in the offense. *Cf.* Brillhart v. United States, 2009 WL 462727, * 4 (M.D. Fla., February 23, 2009)(Counsel was not ineffective for failing to seek a downward adjustment based upon petitioner's role in the offense because "[p]etitioner points to nothing which would have suggested to a reasonable attorney that his role was less than that of others involved.").

In addition, Parker has failed to establish that she was prejudiced by counsel's failure to object either to the PSI or to the District Court's finding concerning her role in the offense, with its consequent two level enhancement in her guideline calculations. The "above-the-guideline sentence" of 60 months was imposed by the District Court not because of Parker's role in this offense but, rather, because of her life-long history of stealing. The District Court specifically concluded, in pertinent part, as follows:

This is not Ms. Parker's first time to Federal Court, nor is it her first time to any court, starting back in 1991 at age 19, negotiating worthless instruments, stealing $5,800, being placed on probation for that in order to pay restitution. My guess is not much of the restitution was ever paid.

Then 1994, at age 22, she ends up in this Court after stealing money and charged with mail fraud, restitution order of $10,987, almost $11,000.

Age 29, negotiating worthless instruments, ten cases. At age 31, negotiating worthless instruments, $4,500 in restitution.

Then in 2008, she's convicted again in this Court, Federal Court, after having scammed FEMA for $9,143 and forwhatever reason ended up on probation.

2009, false claims against the Government, that's the income tax fraud, for $220,000. And that's the case that she got 46 months from Judge Granade.

You know, we hear about serial murderers. Ms. Parker is a serial thief. She steals money, she's been doing it most of her life, apparently steals it in big sums from individuals, and my guess is very little of it has ever been returned to anybody.

I don't have any, any sympathy whatsoever for Ms. Parker, nor do I see that a sentence that would be concurrent would be appropriate, nor do I even see that a guideline sentence is appropriate for Ms. Parker. She cries out for an above-the-guideline sentence and a significantly -- a sentence significantly above the guideline sentence because I think that's the only way we're ever going to get any relief, society is ever going to get any relief from Ms. Parker. You know, as long as she -- she's already proven that it doesn't matter if you put her on probation or supervised release, it doesn't matter. She's going to steal money and continue to steal money.

So, it's my opinion that an above-the-guideline sentence is appropriate for Ms. Parker, a sentence of 60 months. That's half of the statutory maximum of Count Eight. The statutory maximum for Count One is 30 years. At some point, if this continues, I can well see that Ms. Parker could receive a sentence of somewhere close to 30 years. It would be -- it would not surprise me at all.

But for purposes of this event here today, it's my finding based on all of the factors that I would consider under Section 3553(a) of Title 18

that a sentence of 60 months consecutive to the sentence imposed by Judge Granade is appropriate and will accomplish the sentencing objectives set forth in that statute.

(Doc. 76 at pp. 6-8). The sentencing outcome would, therefore, be no different if Parker had been found to have played a minor role in the present offense.[3] Counsel's failure to object to the PSI and the finding concerning Parker's role did not fall outside the wide range of acceptable professional conduct and therefore did not constitute ineffective assistance of counsel.

Parker also claims that her counsel should have asked the court for a departure or variance based on her acceptance of responsibility, lack of education, poor economic condition, and the fact that she must support her children – including a disabled child she relies on for support. (Doc. 86 at 32-33; Doc. 92 at 7-8.) Parker specifically contends:

> It is quite obvious that PARKER is uneducated due to the fact that she got pregnant in high school and had to drop out to care for her child and her siblings. (PSI: 63) Accordingly, with no education or skills, PARKER had to make ends meet for her family by living on welfare and her child's disability.[12] It is quite obvious that PARKER was involved in these crimes due to her poor economic conditions and the number of children she must support and the fact that she ia a co-defendant with her mother clearly supports a variance under Section 3553(a). (PSI: 56, 57).

> FN 12: One of her own children is disabled and relies on her for support. (PSI: 57).

(Doc. 86 at 32-33). Although Parker contends that "Counsel's failure to advise the District Court of the factors to support a variance prevented the Court from considering her "childhood and other mitigating factors" (doc. 86 at 33; doc. 92 at 7), she

---

[3] Parker's argument that her inability to address the issue on appeal because it was procedurally barred was itself the requisite prejudice is not only meritless but illogical. An issue that lacks merit at the trial level is not elevated to an issue bearing merit simply because it is procedurally barred by trial counsel's failure to object. In other words, contrary to Parker's contention, there is no probability that, but for Mr. Byrd's failure to object, "the results of the proceeding would have been different." (Doc. 86 at 25-26).

acknowledges, by her own citation to various paragraphs in her PSI report, that all this information was contained in the PSI report which was adopted by the District Court "as published" (doc. 76 at 3). The District Court's adoption of Parker's PSI report containing all the information presently relied upon by Parker as the facts her counsel failed to present to the Court in support of a downward departure actually negates Parker's contention that "the Court was unable to ascertain whether there were characteristics or circumstances relative to PARKER that would have made her case significantly different from the heartland of cases covered by the guidelines" and thus "would have required the District Court to grant PARKER's request for a downward departure due to her family commitments and ties" (doc. 86 at 36). Parker's assertion that a downward departure was required under the principles set forth in Koon v. United States, 518 U.S. 81, 92 (1996), and Gall v. United States, 552 U.S. 38, 46 (2007), is without merit. The Supreme Court in Gall held that "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." 552 U.S. at 46. Similarly, the Court declared in Koon that "Congress allows district courts to depart from the applicable Guideline range if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Koon, 518 U.S. at 92, *citing* 18 U.S.C. § 3553(b). Neither of these cases mandates a different sentence than that imposed on Parker in this case.

In addition, while Parker's counsel did not object to the PSI at sentencing or seek

a departure or variance, counsel did appropriately advocate on behalf of Parker before

Judge Steele imposed sentence.

> THE COURT: …Mr. Byrd, do you have anything you want to offer on Ms. Parker's behalf before sentence is imposed?
>
> MR. BYRD: Yes, sir, if I might. In paragraph 38, it speaks of her plea of guilty and finding of guilt and sentence in this Federal Court for the false claims against the Government, IRS funds. Ms. Davis prosecuted that matter as well.
>
> Your Honor, those events and these events in this eight-count indictment all occurred at the same time in the same course of conduct, and it's all part of one general fraudulent conduct on the part of Stacy Parker and all of her co-defendants.
>
> In indicting the cases, the Government, it got separated due to the timing of the availability of agents, the Secret Service being in charge of these cases, the IRS being in charge of other cases, so they got it separated but it's all one course of conduct and one set of fraudulent acts on the part of Ms. Parker and others.
>
> In that false claims against the Government and the IRS frauds, Ms. Parker's guideline range was 24-30 months. She was given a sentence of 46 months that Judge Granade upwardly departed because of Ms. Parker's criminal conduct and the history on these several pages that Your Honor has seen.
>
> What I'd ask the Court to consider is a sentence in the guideline range for this offense but running it concurrent with or part of the false claims against the Government sentence, which was an upward departure of 46 months. So, there's still - - it takes into account the fact that there was additional loss and additional conduct to the false claims against the Government, but that was an upward departure sentence of 48 months. So, she's not receiving less than she would have got if this had all been in one indictment and put together at the same time. I think that would be a reasonable resolution of all of Ms. Parker's criminal conduct.

(Doc. 76 at 74-76) Counsel asked for the sentence to be concurrent with the upward

departure sentence of 46 months already imposed by Judge Granade in the case in which

Parker pleaded guilty to false claims against the government.[4] Counsel's failure to obtain such a concurrent sentence from the District Court in this case does not render his representation of Parker ineffective within the meaning of Strickland.

      C.      Ineffective Assistance of Counsel on Appeal (Claim V)

Parker further claims that, but for ineffective assistance counsel at the appellate stage of her proceedings, she would have prevailed on appeal. Specifically, Parker alleges "[i]t is quite evidence that [counsel] did not know what he was doing…" because trial counsel stated the inappropriate standard of review in her appeal. (Doc. 86 at 39)   Parker argues that her appellate counsel "states that it is an abuse of discretion standard when in fact it is plain error."  Doc. 86 at 39, *citing* United States v. Faris, 583 F.3d 756, 759 (11th Cir. 2009)("We review a district court's application of the guidelines to the facts de novo and all factual findings for clear error."); and United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000)("Where a defendant raises a sentencing argument for the first time on appeal, we review for plain error.")[5].  However, the Eleventh Circuit, when reviewing Parker's case, clearly stated that the correct standard of review is "abuse of discretion." Doc 81 at 5 (11th Cir. Op. at 2).  *See also* Gall, *supra*, a case relied upon by Parker for the proposition that a downward departure was mandated in her case (doc. 86 at 36), in which the Supreme Court held:

> In Booker we invalidated both the statutory provision, 18 U.S.C. §
> 3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines
> mandatory, and § 3742(e) (2000 ed. and Supp. IV), which directed
> appellate courts to apply a de novo standard of review to departures from
> the Guidelines. As a result of our decision, the Guidelines are now

---

[4] *See* United States v. Stacy Parker, Case No. 1:09-cr-00060-CG-C (S.D. Ala.).

[5] The Eleventh Circuit, in Aguillard, noted the distinction between "arguing that a longer sentence is unnecessary for rehabilitation, and arguing that rehabilitative programs may not be taken into account in deciding the length of the sentence."  217 F.3d at 1320.

> advisory, and ***appellate review of sentencing decisions is limited to determining whether they are "reasonable."*** Our explanation of "reasonableness" review in the Booker opinion made it pellucidly clear that ***the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions***. See 543 U.S., at 260–262, 125 S.Ct. 738; see also Rita, 551 U.S., at ——, 127 S.Ct. 2456 (STEVENS, J., concurring).

552 U.S. at 46 (emphasis added).

The reasonableness of Parker's sentence has already been resolved on direct appeal. *See* Doc. 86 (11th Cir. Op.) "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted). However, this Court would still find that Parker's sentence was reasonable under the circumstances. Parker's sentence will not be disturbed unless she carries her burden and shows that the sentencing court "committed a clear error or judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Shaw, F.3d 1230, 1238 (11th Cir. 2009). Parker has not carried this burden.

Regardless of which review standard trial counsel presented to the Eleventh Circuit on appeal – either abuse of discretion or plain error – it is the opinion of the undersigned that this alleged error does not constitute a valid claim for ineffective assistance of counsel. Furthermore, Parker has failed to show that her counsel was *ineffective*, that she was prejudiced, or that she would have prevailed on appeal had counsel stated a different standard for the Eleventh Circuit.

IV.     Evidentiary Hearing.

No evidentiary hearing is needed because Parker's claims are due to be denied as a matter of law and are affirmatively contradicted by the record.  Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002).  Parker's claims are also otherwise capable of resolution based on the existing record.  Schultz v. Wainwright, 701 F.2d 900, 901 (11th Cir. 1983).  An evidentiary hearing is also unnecessary because Parker's claims are "merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible."  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); see also Lynn v. United States, 365 F.3d 1225, 1239 (11th Cir.), cert denied, 534 U.S. 891 (2004); Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir.), cert denied, 127 S.Ct. 2269 (2007) (§ 2254 case citing "clear precedent" that conclusory allegations "are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support.").  "[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."  United States v. Bejacmar, 217 Fed.Appx. 919, 921 (11th Cir. 2007), citing Aron, 291 F.3d at 715.

V.     CERTIFICATE OF APPEALABILITY

Pursuant to the changes to Rule 11 of the Rules Governing Section 2255 Proceedings, which became effective December 1, 2009, the court addresses the appealability of the recommended denial of plaintiff's habeas petition. A certificate of appealability [COA] may issue only if "the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, a defendant "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (*quoting* <u>Slack v. McDaniel</u> 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003), *quoting* <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983).

The issues Parker has raised in her § 2255 motion are not sufficiently substantial to justify the issuance of a certificate of appeal. Parker's guilty plea was clearly voluntary and knowing. Trial counsel's failure to object to the PSI and allegedly discuss the government's discovery with the defendant does not constitute ineffective assistance of counsel under the precepts set forth in <u>Strickland</u>. Trial counsel performance does not fall outside the range of professional conduct. Under the lens of ineffective assistance of counsel during appellate proceedings, Parker claims her sentence was unreasonable. This is no more than another attempt to re-litigate the reasonableness of the sentence, already affirmed on appeal, and the Court is not required to address this claim. <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000) (citation omitted).

Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in denying the instant § 2255 motion or that Parker should be allowed to proceed further. <u>Slack</u>, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of a case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, the undersigned recommends that the Court conclude that no reasonable jurist could find it debatable whether Parker's § 2255 motion should be denied; thus, she is not entitled to a certificate of appealability.

Additionally, the undersigned here addresses the related issue of whether any appeal of an order adopting this Report and Recommendation and denying habeas relief may be brought *in forma pauperis*. An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); *see* Fed.R.App. P. 24(a)(3)(A); Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000)(concluding that "good faith" is "an objective concept" and that "not taken in good faith" is "a synonym for frivolous"); DeSantis v. United Techs. Corp., 15 F.Supp.2d 1285, 1288-89 (M.D. Fla.1998) (stating that good faith "must be judged by an objective, not a subjective, standard" and that an appellant "demonstrates good faith when he seeks appellate review of any issue that is not frivolous"). An appeal filed *in forma pauperis* is frivolous if "it appears that the Plaintiff has little to no chance of success," meaning that the "factual allegations are clearly baseless or that the legal theories are indisputably meritless." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). For the foregoing reasons, the undersigned recommends that the court find no possible good faith basis for appeal of the denial of the petitioner's habeas claims, and thus that no appeal of such a ruling may be brought *in forma pauperis*.

## CONCLUSION

For the reasons set forth above, it is the **RECOMMENDATION** of the undersigned that petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED**, and that no Certificate of Appealability should issue or leave to appeal *in forma pauperis*.

**Notice of Right to File Objections**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. The Rules further oprovide that "[a] party may respond to another party's objections within 14 days after being served with a copy." FED. R. CIV. P. 72(b).

**DONE** this _3rd_ day of December, 2013.

_/s/ Katherine P. Nelson_____
KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE